UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

RAFFI BOURSOUMIAN, M.D.,

                    Plaintiff,

         v.                                                          **DECISION AND ORDER**
                                                                     06-CV-831S
UNIVERSITY AT BUFFALO, The State University
of New York School of Medicine and Biomedical
Sciences,

UNIVERSITY MEDICAL RESIDENT SERVICES, P.C.,

ROSEANNE BERGER, M.D., Individually and as
Senior Associate Dean of Graduate Medical Education,

JAMES HASSETT, M.D., Individually and as Program
Director of the Department of Surgery, and

ROGER SEIBEL, M.D., Individually and as Professor
of Surgery in the Department of Surgery,

                    Defendants.

## I. INTRODUCTION

On November 22, 2006, Plaintiff Barsoumian filed an Order to Show Cause for

Preliminary Injunction, and a Summons and Complaint, in New York State Supreme Court,

County of Erie.  In his Complaint, Plaintiff alleges that he was improperly terminated from

the surgical residency program at Defendant University at Buffalo's School of Medicine and

Biomedical Sciences (the University and its School of Medicine are referred to hereafter

as "UB").

On December 15, 2006, Defendant University Medical Resident Services, P.C.

-1-

("UMRS") removed the action to this Court on the ground that it contains claims over which the Court has original jurisdiction. Presently before this Court are a Motion to Dismiss by Defendants UB, Hassett, Seibel and Berger (Docket No. 4), a Motion to Dismiss by UMRS (Docket No. 8), and Plaintiff's Motion for a Preliminary Injunction (Docket No. 19).

Having reviewed the parties' submissions on the respective motions, this Court finds further oral argument unnecessary.[1]

## II. BACKGROUND

### A.    Factual Allegations

UB's medical school contains a Department of Surgery. Its post-graduate training program for a general surgery resident is typically five years in length.   Docket No. 1, Complaint, ¶ 8.  These post-graduate training years are denominated as PGY1, PGY2, PGY3, PGY4 and PGY5.  *Id.* ¶ 9.  A surgical resident must successfully complete each year of the program in order to be promoted to the next year.  *Id.* ¶ 10.  This includes the successful completion of rotations in hospitals affiliated with UB.  *Id.*

General surgery residents enter into annual contracts of employment—the Residency Employment Agreement ("Agreement")—with UMRS, pursuant to which the residents agree to provide professional medical services in one or more of the teaching hospitals affiliated with UB.  *Id.* ¶ 11, Ex. A ¶ 1.  A resident's Agreement is renewed for a successive one-year term upon his or her satisfactory evaluation for the current year by appointed faculty members.  *Id.* ¶ 11, Ex. A ¶ 3.  In addition to the Agreement, UB provides

---

[1]  This case was transferred to the undersigned on October 17, 2007.  The Honorable John T. Elfvin, to whom the case was originally assigned, heard argument on the pending motions on April 27, 2007.

a Probation and Dismissal Policy, setting forth the circumstances under which a program may decide to dismiss a resident or not renew the Agreement, and a Grievance Procedures Policy, which is the "exclusive mechanism for redress" of a dispute between a resident and the residency program or UMRS.  *Id.* ¶¶ 12-13, Exs. B, C.

In March 2002, Plaintiff was offered, and accepted, a position in UB's general surgery residency training program as a PGY1 resident.  *Id.* ¶¶ 22-23.  Plaintiff entered into an Agreement with UMRS for the period June 17, 2002 through June 23, 2003.  *Id.* ¶¶ 24-25, Ex. A.  Plaintiff's Agreement was renewed for PGY2, and again for PGY3.  *Id.* ¶¶ 28-33, Ex. A.

According to Plaintiff, sometime after June 5, 2004, Defendant Hassett embarked on a campaign to remove him from the Department of Surgery.  *Id.* ¶ 42.  Early in Plaintiff's PGY3, Hassett placed him on probation with the goal of improving his professional activity, including his communication skills, attention to detail, administrative activity and professional behavior.  *Id.* ¶ 43, Ex. D.  During his probation, in July 2004 and October 2004, Plaintiff received unsatisfactory evaluations for trauma rotations he performed at Erie County Medical Center ("ECMC").  In November 2004, Hassett advised Plaintiff that he would need to remediate the unsatisfactory rotations and that failure to do so could lead to dismissal from the program.  *Id.* ¶¶ 45-46.  Plaintiff and the ECMC faculty agreed that Plaintiff would return to ECMC at a later date to remediate.  *Id.* ¶ 46.

On January 10, 2005, Hassett notified Plaintiff that he had successfully completed his probation and was being returned to "good standing."  *Id.* ¶¶ 53-54.  For the first time, Hassett also informed Plaintiff that there might be a challenge to his returning to ECMC for

trauma rotations.  *Id.* ¶ 55.  Plaintiff believes Defendant Seibel, influenced by Hassett's campaign against Plaintiff, decided not to permit him to return to ECMC.  *Id.* ¶ 48.

Approximately one week later, on January 18, 2005, Hassett informed Plaintiff that his Agreement would not be renewed for the next contract year.  *Id.* ¶ 57.  At that point, Plaintiff had successfully completed his probation, but had not yet had the opportunity to remediate his trauma rotations.  *Id.* ¶ 63.  Shortly thereafter, on February 4, 2005, Seibel notified Hassett by letter that ECMC would allow Plaintiff to return to remediate his trauma rotations.  *Id.* ¶ 51.

Hassett scheduled a Level I discussion with Plaintiff relative to his nonrenewal, pursuant to the Grievance Procedure Policy.  *Id.* ¶ 58, Ex. C.  At the conclusion of the discussion, on February 7, 2005, Hassett maintained the decision not to renew Plaintiff's Agreement, despite the fact that Plaintiff had been returned to "good standing."  *Id.* ¶¶ 58, 61.  Plaintiff requested a Level II grievance hearing and, on July 12, 2005, the Level II grievance committee upheld the decision not to renew.  *Id.* ¶¶ 66-67.

Plaintiff requested a Level III review hearing, the final step in the grievance process. *Id.* ¶ 68.  The level III review committee held a hearing on October 31, 2005 and "unanimously agreed that the Level 2 Committee's decision to uphold [Plaintiff's] non-renewal was a violation of UB policy."  *Id.* ¶ 69, Ex. D.  The committee concluded that "the process of non-renewal decision making was flawed" and "did not follow the written policy as stated in [UB's] Policies and Procedures, including the Probation and Dismissal Policy." *Id.* Ex. D.

In November 2005, Cheryl Kishbaugh, UB's Associate Dean of Graduate Medical

Education, notified Plaintiff that he had been put back on the payroll and would be reinstated as a PGY3 surgery resident.  *Id.* ¶¶ 68, 71-72.  Over the next three months, Plaintiff repeatedly inquired as to when he would be returned to work and was given no indication that he would not, in fact, be reinstated.  *Id.* ¶¶ 73-75.  Ultimately, on February 21, 2006, Defendant Berger informed Plaintiff that he would not be returned to the Department of Surgery because "UB affiliated hospitals advised . . . that they cannot commit to provide [him] with access to their sites for continued residency training."  *Id.* ¶ 76.

This action followed, in which Plaintiff asserts five claims for relief.  In the first, Plaintiff seeks preliminary injunctive relief pending resolution of his further claims.  Because this claim seeks only temporary relief during the pendency of the litigation, rather than a final outcome, the request is properly considered by way of motion, and not as an independent claim for relief.  Plaintiff implicitly conceded as much when he subsequently filed a  motion for preliminary injunction, and his request will be considered on that motion only.

Plaintiff's second claim alleges that Defendants Berger, Hassett and Seibel deprived him of his protected property and liberty interests and his due process rights, in violation of 42 U.S.C. § 1983.  In his third claim, Plaintiff alleges breach of contract by UMRS and UB.  The fourth claim is against Berger, Hassett and Seibel for tortious interference with Plaintiff's contractual employment relationship.  In his fifth claim, Plaintiff alleges that Berger, Hassett and Seibel tortiously interfered with his current and prospective economic opportunities.

## III.  DISCUSSION

**A.      Eleventh Amendment Immunity**

Defendants UB, Hassett, Seibel and Berger (together, the "UB Defendants") move to dismiss all claims against UB and certain aspects of the claims against the individual defendants on the ground of Eleventh Amendment immunity.  The parties appear to have reached accord on this issue.

Plaintiff concedes that all claims against UB "must fail based on 11th Amendment immunity."  Docket No. 14 ¶ 4.

Plaintiff further concedes that his § 1983 claim against Hassett, Seibel and Berger must fail to the extent he seeks monetary damages against them in their official capacities.  But, Plaintiff urges that the § 1983 claim stands to the extent it is brought against these Defendants in their official capacities for prospective nonmonetary relief, and in their individual capacities for monetary damages.  *Id.*  ¶¶ 5-6; Docket No. 17 at 9-11. Defendants Hassett, Seibel and Berger acknowledge that these aspects of the § 1983 claim remain pending.  Docket No. 34 at 6-7.

Finally, the parties agree that the state law claims against Hassett, Seibel and Berger may stand only to the extent the claims are brought against them in their individual capacities.  Docket Nos. 7 at 7-8; 17 at 11; 34 at 7-8.

Based on these concessions and acknowledgments, which are consistent with relevant authority cited in the parties' memoranda, there is nothing left for the Court to resolve with respect to Eleventh Amendment immunity.  Accordingly, Defendant UB is dismissed from this action; the § 1983 claim (Second Cause of Action) against Defendants

Hassett, Seibel and Berger is dismissed in part, insofar as it seeks monetary damages against them in their official capacities; and the state law claims against Defendants Hassett, Seibel and Berger (Fourth and Fifth Causes of Action) are dismissed in part, insofar as they are brought against these Defendants in their official capacities.

**B.     Failure to Join ECMC and Kaleida Health as Necessary Parties**

All Defendants have moved to dismiss this action under Rule 12(b)(7) of the Federal Rules of Civil Procedure, for failure to join "necessary"[2] parties under Rule 19. Alternatively, they seek an order directing Plaintiff to amend his complaint to add ECMC and Kaleida Health as defendants.

Rule 19 states, in pertinent part, as follows:

(a)(1) **Required Party.**  A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
(A) in that person's absence, the court cannot accord complete relief among existing parties; or
(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

According to the UB Defendants, Plaintiff received unsatisfactory evaluations for two of his trauma rotations at ECMC, and one pediatric surgery rotation at Kaleida Health's Women and Children's Hospital of Buffalo.  Docket No. 5, ¶¶ 12, 14.  Together, the Defendants urge that these hospitals are required parties in this litigation for three reasons: (1) the hospitals were active participants in the transactions resulting in the lawsuit; (2) the

---

[2]  Although both UMRS and the UB Defendants use the term "necessary party" the Court notes that the 2007 Amendment to Fed. Rule Civ. Proc. 19, replaced the word "necessary" in subparagraph (a) with the word "required."

hospitals' ability to manage their own facilities may be impaired by the disposition of this action; and (3) absent the hospitals' agreement to allow Plaintiff to practice medicine in their facilities, Plaintiff cannot be promoted to the next level, and eventually graduate. Docket Nos. 7 at 5; 10 at 6.  For the reasons that follow, the Court is not persuaded that any of Defendants' contentions warrant a finding that ECMC and Kaleida Health are required parties.

Plaintiff alleges that the individual UB Defendants deprived him of his constitutional rights when they failed to follow UB's policies and procedures for nonrenewal, that UMRS breached its Employment Agreement with Plaintiff when it failed to follow the requisite procedures, and that the individual UB Defendants tortiously interfered with his employment contract.  These are the events that give rise to Plaintiff's requests for relief, and Defendants have not identified any aspect of these purported failures that involved participation by ECMC and/or Kaleida Health.  Kawahara Enterprises, Inc. v. Mitsubishi Elec. Corp., 1997 U.S. Dist. LEXIS 14282, at (S.D.N.Y. Sept. 22, 1997) (no basis for finding entity was required party where plaintiff's claims did not allege any acts by that entity).

As for the second reason, Defendants have not explained how a favorable determination on Plaintiff's § 1983 and/or state law claims would impair ECMC's or Kaleida Health's ability to manage their respective facilities.  To the extent Defendants intend to suggest that Plaintiff's reinstatement would require the hospitals to provide him with rotations, they have not offered any attestation to that effect or any documentary support. Docket No. 32 ¶ 12 (to the contrary, Berger attests that UB's grievance process is not determinative of whether hospitals must provide Plaintiff access to their facilities.)  Indeed,

these hospitals are not parties to the at-issue Employment Agreement which, in turn, expressly states that the hospitals have their own rules, regulations, procedures, and disciplinary proceedings that are separate and distinct from UB and UMRS.  Complaint, Ex. A., ¶¶ 7(a)(3), (c).  More to the point, neither of the hospitals is claiming to have an interest here that would be impaired or impeded by its absence from this suit.  City of New York v. Milhelm Attea & Bros, 550 F. Supp. 2d 332, 353 (E.D.N.Y. 2008) (citing Conntech Dev. Co. v. University of Conn. Educ. Props., 102 F.3d 677, 682 (2d Cir. 1996); Fed. R. Civ. Pro. 19(a)(1)(B)(i).

The third argument is basically one of impossibility.  Defendants claim that one aspect of Plaintiff's request for relief—i.e., reinstatement— would be meaningless because ECMC and Kaleida Health won't allow Plaintiff to practice in their facilities and, therefore, he cannot succeed in the program.

Plaintiff seeks reinstatement as a PGY3.  He is not asking for a guarantee that he will ultimately succeed in the program, or that a subsequent dismissal or nonrenewal, carried out in compliance with applicable policies and procedures, will not occur. Defendants have not shown that Plaintiff cannot receive the relief he seeks— reinstatement to PGY3 status—absent joinder of ECMC and Kaleida Health.

Defendants' impossibility argument is further undermined by Defendant Hassett's proffered documentation, which indicates that ECMC has not yet reached a decision on its Surgical Staff's recommendation to bar Plaintiff's return.  Rather, ECMC tabled the matter because Plaintiff "was removed from the Residency Program by the University at Buffalo and has not been reinstated."  Docket No. 6, Ex. B.  In short, there was no need to make a decision unless and until UB reinstated Plaintiff.  Beyond that, Defendant

Hassett has acknowledged that ECMC is not the only site at which Plaintiff might perform trauma rotations.   Complaint ¶ 49; Docket No. 16-3.   In sum, Defendants have not demonstrated that ECMC and Kaleida Health's absence will deny Plaintiff relief here.

For all of the foregoing reasons, this Court finds that ECMC and Kaleida Health are not required parties who must be joined in this action.[3]

## C.      Preliminary Injunction

Plaintiff has moved to enjoin Defendants from refusing to reinstate him into the residency program.

Injunction relief "is an extraordinary and drastic remedy which should not be routinely granted." Med. Soc'y of New York v. Toia, 560 F.2d 535, 538 (2d Cir. 1977); *see also*, Borey v. Nat'l Union Fire Ins. Co. of Pittsburgh, 934 F.2d 30, 33 (2d Cir. 1991).   The standard in this Circuit for issuance of a preliminary injunction is well-settled.   "To obtain a preliminary injunction, the moving party must show, first, irreparable injury, and second, either (a) likelihood of success on the merits, or (b) sufficiently serious questions going to the merits and a balance of hardships decidedly tipped in the movant's favor."  Green Party of New York State v. New York State Bd. of Elections, 389 F.3d 411, 418 (2d Cir. 2004).

"The showing of irreparable harm is perhaps the single most important prerequisite for the issuance of a preliminary injunction, and the moving party must show that injury is likely before the other requirements for an injunction will be considered."  Kamerling v. Massanari, 295 F.3d 206, 214 (2d Cir. 2002) (citations and quotation marks omitted).  "To

---

[3]  Defendants moved for dismissal of this action.  This Court notes that the question of whether a case should be dismissed absent a required party arises only where joinder of that party is not feasible. Republic of the Philippines v. Pimentel, – U.S. –, 128 S. Ct. 2180, 2188, 171 L. Ed. 2d 131 (2008). Defendants have not even remotely implied that such a circumstance exists here.  Thus, even had the Court accepted their required party argument, the proper course would have been joinder, not dismissal.

establish irreparable harm, a party seeking preliminary injunctive relief must show that there is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation.  And, irreparable harm must be shown to be actual and imminent, not remote or speculative." *Id.*

Here, Plaintiff claims he cannot commence his career as a surgeon until he is reinstated to the residency program, and that this negatively impacts his livelihood, earning potential, and employment options in the meantime.  Docket Nos. 20, ¶ 11; 21, ¶¶ 21-22; 22 at 2.  Plaintiff has not offered any evidence from which this Court can conclude that the harm he identifies—a delay in his employment and earnings as a surgeon—cannot be remedied by monetary damages.  Reuters Ltd. v. United Pres, Int'l, Inc., 903 F.2d 904, 907 (2d Cir. 1990) (irreparable harm is that which is "incapable of being fully remedied by monetary damages");  Sperry Int'l Trade, Inc. v. Gov't of Israel, 670 F.2d 8, 12 (2d Cir. 1982) (movant's offer of proof was unusually sparse and failed to demonstrate that potential harm involved anything more than monetary loss); Simon v. Foley, 2007 U.S. Dist. LEXIS 86330, at * (W.D.N.Y. Nov. 21, 2007) (plaintiffs did not demonstrate irreparable harm where, among other things, the harm was compensable through monetary damages); Arrey v. Government of Republic of Cameroon, 1991 U.S. Dist. LEXIS 6449, at *4 (S.D.N.Y. May 13, 1991) (it is a general rule that claim for injunctive relief is unavailing where monetary damages can adequately remedy loss; movant must provide evidence of damage that cannot be rectified by financial compensation).

Nor can Plaintiff demonstrate irreparable harm based on his vague contention that, "if [he] is not put back to work immediately, his chance to successfully complete the

program *at all* may be lost forever." Docket No. 22 at 2 (emphasis in original). In this Court's view, Plaintiff's statement is sheer speculation and is undercut by his delay in moving for relief. Although UMRS removed this action from state court on December 15, 2006, Plaintiff did not move for injunctive relief until more than fifteen months thereafter. He has not explained how the claimed risk to his ability to successfully complete the program is any more imminent or irreparable now than it was when the case was first removed.

For the reasons stated, this Court finds that Plaintiff has not demonstrated that he is likely to suffer irreparable harm before a decision on the merits of this case can be rendered. All that he has claimed is harm to earnings, which can be addressed by monetary damages, and the possibility of harm to his success, which is so speculative that it does not warrant the drastic remedy of injunctive relief. Because Plaintiff has failed to establish irreparable harm, this Court need not address the likelihood of success on the merits and/or the balance of hardships.

## IV. CONCLUSION

For the reasons stated above, the UB Defendants' Motion to Dismiss certain portions of the Complaint is granted in part and denied in part. Specifically, the motion is granted to the extent it seeks dismissal of Defendant UB, and of certain claims against the individual Defendants on Eleventh Amendment immunity grounds, but is denied to the extent it seeks dismissal of the action or joinder of parties under Rules 12(b)(7) and 19. Likewise, Defendant UMRS's Motion to Dismiss or Compel Joinder of Parties is denied. Finally, Plaintiff's Motion for a Preliminary Injunction is denied.

**V. ORDER**

IT HEREBY IS ORDERED, that the Motion to Dismiss (Docket No. 4) by Defendants University at Buffalo the State University of New York School of Medicine and Biomedical Sciences, Roseanne Berger, M.D., James Hassett, M.D., and Roger Siebel, M.D., is GRANTED IN PART and DENIED IN PART;

FURTHER, that Defendant University Medical Resident Services, P.C.'s Motion to Dismiss (Docket No. 8) is DENIED;

FURTHER, that Plaintiff's Motion for Preliminary Injunction (Docket No. 19) is DENIED; and

FURTHER, that the Clerk of the Court is DIRECTED to terminate University at Buffalo the State University of New York School of Medicine and Biomedical Sciences as a Defendant to this action.


SO ORDERED.


Dated:   March 10, 2009
         Buffalo, New York

                                   /s/William M. Skretny
                                   WILLIAM M. SKRETNY
                                   United States District Judge