UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

RAFFI BARSOUMIAN, M.D.,

         Plaintiff,
 v.                    **DECISION AND ORDER**
                               06-CV-831S
UNIVERSITY AT BUFFALO, THE STATE
UNIVERSITY OF NEW YORK SCHOOL OF
MEDICINE AND BIOMEDICAL SCIENCES,
UNIVERSITY MEDICAL RESIDENT SERVICES,
P.C., ROSEANNE BERGER, M.D., JAMES
HASSETT, M.D., ROGER SEIBEL, M.D.,

         Defendants.

## I. INTRODUCTION

    Plaintiff Raffi Barsoumian, M.D., commenced this action in November 2006 seeking injunctive relief and damages for Defendants' failure to reinstate him in a medical residency program after he successfully grieved the non-renewal of his employment agreement. In a March 19, 2012 Decision and Order, this Court denied the Motion for Summary Judgment of Defendant University Medical Resident Services, P.C. ("UMRS") and granted in part and denied in part the Motion for Summary Judgment of Defendants Roseanne Berger, M.D., and James Hassett, M.D. This Court also granted in part Plaintiff's Motion for Partial Summary Judgment, specifically ordering that Defendants reinstate Plaintiff as a third-year resident on probation.

    Pursuant to this Court's order, the parties have briefed the only remaining issue in this case: whether Plaintiff is entitled, in addition to his previously ordered reinstatement, to monetary damages other than prospective lost wages from a post-graduation surgical

1

practice as a result of Defendant UMRS's breach of a residency employment agreement. Also before the Court is Plaintiff's motion to compel discovery with respect to such damages.

## II. BACKGROUND

Plaintiff was admitted to the five-year Surgical Residency Program of University at Buffalo, the State University of New York School of Medicine and Biomedical Science[1] in March 2002. (Complaint, Docket No. 1-4, ¶¶ 22-23; Declaration of James Hassett, M.D., Docket No. 80, ¶ 9). At that time, he entered into a one-year "Residency Employment Agreement" with UMRS, renewable for each year of the residency program based on his satisfactory performance, a determination based upon evaluations by appointed faculty members. (Compl. ¶¶ 24-25, Ex. A ¶ 3.) The parties do not dispute that Plaintiff's contract was renewed through the June 2004 to June 2005 term. (Compl. Ex. A; UMRS St. Undisputed Facts ¶¶ 1-4, Docket No. 76-2; Pl's St. Undisputed Facts ¶ 11, Docket No. 84.) The University of Buffalo's Grievance Procedures Policy was incorporated into the residency employment agreement by reference. (UMRS St. Undisputed Facts ¶ 2; Pl's St. Undisputed Facts ¶ 48; Compl. Ex. A.)

In June 2004, shortly after the commencement of Plaintiff's third year in the program, Plaintiff was placed on probation for six months as a result of his "continued unprofessional behavior." (Hassett Decl. ¶¶ 18, 20-21; Compl. ¶ 43). While on probation, Plaintiff received unsatisfactory evaluations on two of his trauma rotations at Erie County

---

[1]Pursuant to this Court's March 11, 2009 Decision and Order on Defendants' motions to dismiss, all claims against the University of Buffalo and its School of Medicine were dismissed on Eleventh Amendment immunity grounds. (Docket No. 43.)

2

Medical Center Corporation ("ECMC"), and various additional concerns were raised throughout the probationary period by faculty regarding Plaintiff's professionalism, clinical ability, and honesty. (Hasset Decl. ¶ 25-35, Ex. D; Compl. ¶ 44). Nonetheless, Plaintiff was taken off probation and restored to "good standing," purportedly due to his completion of the educational enhancement process. (Pl's St. Undisputed Facts ¶ 30; Hasset Decl. ¶ 36 Ex D.). Days later, by letter dated January 18, 2005, Defendant James Hassett, M.D., the then-Residency Program Director, informed Plaintiff that he would be recommending non-renewal of Plaintiff's training at the end of the contractual year because of the observations and concerns of the faculty. (Hassett Decl. ¶¶ 1, 37; Pl's St. Undisputed Facts ¶ 31-35).

Plaintiff requested and was granted a Level III grievance review of the non-renewal decision, and a hearing was held on October 31, 2005. (Compl. ¶ 68; Hassett Decl. ¶ 49). During the hearing, the Level III Grievance Committee questioned why Plaintiff was determined to have successfully completed probation when he received two unsatisfactory evaluations. (Hassett Decl. Ex. OO, Docket No. 80-2 at 213-216). As reflected in the grievance decision, Hassett asserted that this was done to allow Plaintiff to apply to other programs while completing his third year in good standing. (Hassett Decl. Ex. OO). The Level III Committee found that because Plaintiff's "removal from probation could reasonably be construed to imply that [Plaintiff] successfully remediated all issues, . . . the decision[] to then notify him of a non-renewal of his contract [was] inappropriate." (Id.). Although "the process of non-renewal decision making was flawed," the committee noted that its decision did not "imply, in either a positive or negative fashion, that the information contained within [Plaintiff's] file regarding [his] professionalism either supports or negates this conclusion." (Id.).

3

Plaintiff was restored to payroll in November 2005 and received back pay from June 2005. (Compl. ¶ 71-73; Hassett Decl. ¶ 50). Plaintiff was never returned to residency training, however, and on July 26, 2006, he was removed from UMRS's payroll. (Pl's Statement Undisputed Facts ¶ 64). Plaintiff commenced the instant action in New York State Supreme Court, Erie County, seeking, among other things, relief against Defendants Berger and Hassett pursuant to 42 U.S.C. § 1983 for violating his Fourteenth Amendment Due Process rights, and against Defendant UMRS for its breach of the residency employment agreement. (Compl. ¶¶ 80-120). Following the filing of dispositive motions, this Court determined in a March 19, 2012 Decision and Order that Plaintiff was entitled to partial summary judgment with respect to the breach of contract claim against UMRS and the § 1983 claim against the individual defendants in their official capacity.

Plaintiff's motion for partial summary judgment, in addition to requesting specific performance of the residency employment agreement, indicated that he would also be seeking monetary damages in an amount to be determined at trial. Although the issue of monetary damages was not briefed by the parties at that time, Plaintiff submitted an "Economic Loss Calculation" prepared by an economic consultant. (Affirm. of Andrew P. Fleming, Esq., Ex. FF, Docket No. 83-2.) Each loss scenario described in this exhibit, however, detailed only Plaintiff's loss of prospective earnings from a post-graduation and post-board certification surgical practice. (Id.) Thus, the consultant's calculations assumed Plaintiff's successful completion of not only his third year, but the remaining two years of the five-year residency program as well. This Court concluded that, because such an assumption was speculative, specific performance of the employment contract was an appropriate remedy and ordered Plaintiff reinstated into the residency program. The issue

4

of monetary damages, if any, remained unresolved in that, as the Court indicated in its decision on Plaintiff's subsequent motion for reconsideration, "[t]he record was and is unclear whether Plaintiff is claiming damages 'directly traceable' to the breach of contract that do not consist of lost earnings from his hypothetical future salary as a surgeon." (July 28, 2012 Decision and Order at 6, Docket No. 130.)

Plaintiff was reinstated as of June 4, 2012, to the residency program as a third year resident in compliance with this Court's order. (September 20, 2012 Bench Statement at 3-4, 8, Docket No. 142; see Reply Atty Affirm. of Christen Archer Pierrot, Esq. ¶ 5, Docket No. 127.) Accordingly, the parties were directed to brief the only remaining issue: whether Plaintiff is also entitled to monetary damages other than prospective lost earnings from a surgical practice as a result of Defendant UMRS's breach of contract. (September 20, 2012 Bench Statement at 8; April 19, 2013 Minutes, Docket No. 147.)

## III.  DISCUSSION

As framed in his submissions, the only monetary damages Plaintiff seeks are lost wages or profits he could have earned by becoming a surgeon after the successful completion of the residency program with Defendants and the qualifying examination for board certification in surgery. Plaintiff contends, as he has previously, that but for the breach of his Residency Employment Agreement, "he would have graduated and gone on to test for and practice as a Board Certified Surgeon." (Pl's Mem of Law at 3, Docket No. 150 (footnote omitted).) Alternatively, Plaintiff argues that this Court should allow recovery under the lost chance doctrine, whereby a jury would be tasked with determining the probability that Plaintiff would have graduated from the residency program but for the breach and then use that probability as a basis to determine the appropriate amount of

5

wages lost from the breach. (Id. at 3, 7-9.)

UMRS[2] responds that this Court has already precluded any monetary award based on alleged lost earnings from a surgical practice as speculative as a matter of law. (UMRS Mem of Law in Opp'n at 7-11.) UMRS further argues that Plaintiff's "lost chance" theory of damages is inapplicable where Plaintiff was in fact reinstated into the residency program.[3] (Id. at 11-15.)

With respect to Plaintiff's first assertion that his graduation was a certainty but for UMRS's breach, this Court has already found such an assumption too speculative to form an appropriate basis for monetary damages. As previously noted, prior to the breach by UMRS, Plaintiff's ability to work as a board certified surgeon was still contingent upon his successful completion of his third year of residency, his successful completion of the separately renewed fourth and fifth years of residency, and his successful certification as a surgeon by an entity other than UMRS, specifically the American Board of Surgery. (March 19, 2013 Decision and Order at 13; see July 30, 2012 Decision and Order at 6 (assumption of graduation was "speculative as a matter of law"), Docket No. 130; September 20, 2012 Bench Decision Tr. at 8 (ordering briefing on damages claimed "other than p[ro]spective lost wages"); Hasset Decl. Ex. BBB, Docket No. 80.) In light of the uncertainty of Plaintiff's graduation even prior to UMRS's breach, as well as the attenuation

---

[2]Individual Defendants Hassett and Berger correctly note that the breach of contract claim at issue involves only Defendant UMRS, and this Court acknowledges that they have joined in UMRS's opposition to the extent necessary. (Docket No. 155.)

[3]Plaintiff was again terminated from the residency program following his reinstatement in June 2012, and he is currently in the process of grieving both the terms of his probation and his termination. (Docket Nos. 145, 147.) The parties agree, however, that circumstances following Plaintiff's reinstatement last year should have no bearing on the current discussion of damages. (Pl's Mem of Law at 4 n. 2; UMRS's Mem of Law at 3, Pl's Reply Mem of Law at 4.)

between the breach and the requested lost earnings from a post-certification surgical practice, this Court ordered specific performance of the contract in the form of reinstatement into the residency program.

Plaintiff, as indicated by his counsel at prior status conferences, has interpreted this Court's ruling as prohibiting recovery for lost potential surgical practice earnings only from the date of his reinstatement into the residency program forward. He argues that he is still entitled to seek "those *back* damages/wages that would have been earned from 2005, the time when he was unlawfully dismissed from the program, through 2012, the time that he was reinstated." (Pl's Reply Mem of Law at 10 (emphasis in original).) Accordingly, Plaintiff asserts that "seeking post-graduation 2008-2012 lost earnings is [not] the same as seeking future lost wages." (Id.)

The problem with Plaintiff's perception of this Court's ruling is that it ignores that fact that any award based on Plaintiff's loss of potential earnings or wages from a surgical practice still necessitates a finding that Plaintiff would have not only timely graduated but for the breach, but also would have successfully passed a qualifying examination to become board certified as a surgeon, an examination that is not administered or reviewed by UMRS. As noted above, that assumption has squarely been rejected by this Court.

Plaintiff appears to acknowledge this by devoting much of his submissions to the argument that a jury should be permitted to determine the probability that, but for the breach, Plaintiff would have graduated and gone on to practice as a surgeon, and issue an award accordingly. This argument is based on the "loss of a chance" doctrine applied

7

in medical malpractice cases in certain jurisdictions,[4] which permits the trier of fact to estimate the probability that a patient would have survived but for the physician's negligence and then "award that percentage of the damages the patient would have received had it been certain that he would have survived but for the negligence." Doll v. Brown, 75 F.3d 1200, 1205-06 (7th Cir. 1996); see generally Crosby v. United States, 48 F. Supp. 2d 924, 927-28 (D. Alaska 1999) (surveying theories of lost chance recovery and jurisdictions applying same).[5] The Seventh Circuit expanded the application of this theory into employment discrimination actions, where juries have been permitted to determine the probability that, but for a defendant's discrimination, a plaintiff would have successfully obtained a promotion. See Alexander v. City of Milwaukee, 474 F.3d 437, 449 (7th Cir. 2007); Biondo v. City of Chicago, 382 F.3d 680, 688 (7th Cir. 2004). Plaintiff argues that, in light of these cases, he should be permitted to submit evidence that a high percentage of residents who reach the third year of the program successfully graduate. (Pl's Mem of

---

[4] As described by one court:

Depending on one's perspective, the "loss of chance" doctrine seeks to ameliorate the harsh result of applying rigid causation principles by allowing plaintiffs to recover for some percentage of injuries caused by a defendant, or the doctrine represents an unwise departure from traditional negligence concepts and introduces a measure of speculative uncertainty into medical malpractice lawsuits which will increase health care providers' incentives to employ tests and procedures deemed necessary to avoid malpractice claims, rather than to select tests and procedures through the exercise of sound medical and surgical judgment.

Crosby v. United States, 48 F. Supp. 2d 924, 927 (D. Alaska 1999).

[5] In contrast to the loss of chance theory explored in the cases relied on by Plaintiff, New York's 'loss of a chance' doctrine refers to a more lenient standard of causation, whereby a plaintiff may establish proximate cause in a medical malpractice case by showing that a deprivation of a significant chance of a cure was "a substantial factor" in causing that plaintiff's injury or death. See Kallenberg v. Beth Israel Hosp., 45 A.D.2d 177, 179, 357 N.Y.S.2d 508 (N.Y.A.D. 1st Dep't 1974), aff'd, 37 N.Y.2d 719 (1975); see Crosby, 48 F. Supp. 2d at 927 (noting that courts do not always recognize the same principles to govern 'loss of chance' theories).

Law at 6-7; Affirm. of Christen Archer Pierrot, Esq., in support of Pl's Motion to Compel ¶ 13, Docket No. 157-1.)

Unlike those cases in which the above-described lost chance doctrine has been applied, however, the claim on which Plaintiff now seeks to recover is one for breach of contract, specifically an employment contract. This distinction is particularly important because "[t]here is less basis for denying recovery for loss of a chance in tort cases since: (1) unlike contract cases, the contemplation of the parties is immaterial, . . . and (2) tort cases seek to deter negligent conduct." Wright v. St. Mary's Medical Center of Evansville, Inc., 59 F. Supp. 2d 794, 803 (S. D. Ind. 1999) ("loss of chance doctrine is more compelling where the law is compensating the loss of a chance at life, rather than the loss of a chance at, as here, some purely economic gain"). Further, the residency employment agreement at issue is governed by New York law,[6] which provides that "damages for breach of an employment contract are limited to the unpaid salary to which the employee would be entitled under the contract less the amount by which he should have mitigated his damages." Quinn v. Straus Broadcasting Group, Inc., 309 F. Supp. 1208, 1209-10 (S.D.N.Y. 1970) (consequential damages for loss of opportunity to perform before large audiences due to breach of entertainment contract not recoverable under New York law); Rebh v. Lake George Ventures Inc., 241 A.D.2d 801, 803, 660 N.Y.S.2d 901, 902 (N.Y.A.D. 3d Dep't 1997)(prima facie measure of employment contract is wages that would be payable during remainder of the contractual term); see Fox v. Lummus Co., 524 F.Supp. 27, 30 (S.D.N.Y. 1981); Cornell v. T. V. Dev. Corp., 17 N.Y.2d 69, 74, 215 N.E.2d

---

[6] The parties do not dispute that New York law applies, and, indeed, the agreement itself provides as much. (Compl. Ex A ¶ 12.)

349, 351 (1966); Woodford v. Benedict Community Health Ctr., 188 A.D.2d 863, 864, 591 N.Y.S.2d 582, 583 (N.Y.A.D. 3d Dep't 1992).

Here, the residency agreement was limited to one-year terms of employment that could be renewed by UMRS based on Plaintiff's satisfactory performance. (Compl. Ex. A ¶ 3). Even if UMRS renewed the agreement for each of the remaining two years of the residency program and Plaintiff then successfully graduated, however, UMRS would have been under no contractual obligation pursuant to this agreement to hire him as a surgeon or pay him wages or fees for a surgical practice. Thus, the alleged consequential loss of these wages or fees does not constitute "unpaid salary to which [Plaintiff] would be entitled under the contract," Quinn, 309 F. Supp. at 1209, and is therefore not appropriately included in any calculation of "back pay." Noel v. N.Y.S. Office of Mental Health Central New York Psychiatric Center, 697 F.3d 209, 213 (2d Cir. 2012) (back pay consists of wages and benefits the employee *would have earned from his employer* from the date of discharge to the date of reinstatement).

It is arguable that Plaintiff could have established entitlement to his resident's salary from the possible fourth and fifth year renewals, inasmuch as renewal was expressly contemplated by the residency employment agreement, but no such argument is raised here. See Woodford, 591 N.Y.S.2d at 583 (special damages contemplated by the parties at the time the contract is made, such as where "continued employment was specifically contemplated or promised," may be recoverable on an employment contract); Bali v. Christiana Care Health Servs., Inc., No. C.A. 16433 NC, 1999 WL 413303, *4 (Del. Ch. June 16, 1999) (although term of residency contract was nominally year-to-year, arrangement correlated to five-year term of residency program); but see Sample v. Gotham

Football Club, Inc., 59 F.R.D. 160, 162, 165-66 (S.D.N.Y. 1973) (wrongful termination of second of three individually executed consecutive one-year contracts did not entitle plaintiff to benefits found in the contract for the third one-year term); Diederich v. Providence Health & Servs., No. C10-1558, 2012 WL 4467546, *11-12 (W.D. Wash. Sept. 26, 2012) (where term of residency employment contract was limited to one year subject to reappointment, recoverable damages were limited to that contract year); see generally Negussey v. Syracuse Univ., No. 95-cv-1827, 1997 WL 141679, *17 (N.D.N.Y. Mar. 24, 1997) (even such "special damages" must ordinarily be related to an employee's compensation, such as commissions or profit sharing plans). Further, even if proper, an award of such earnings would necessarily be mitigated by wages paid by UMRS following the Level III grievance committee's ruling, as well as any salary earned by Plaintiff from other employers during the remainder of the term of the renewed residency contract. To that end, there is no dispute that Plaintiff was restored to payroll in 2005 and continued to receive his resident's salary through July 2006, over a year after the non-renewal. (Pl's St. Undisputed Facts ¶¶ 49, 64); see Davis v. Mann, 882 F.2d 967, 972-73 (5th Cir. 1989) (an employee suffers no compensable damage from an early employment termination where he has been paid his full salary for the contract term).

      Finally, although the contract at issue is one for employment, and the parties do not argue otherwise, the Court is cognizant of the fact that a residency is also an educational program that anticipates a resident will seek board certification following completion. See Diederich, 2012 WL 4467546 at *11 (noting that courts interpret whether a medical residency agreement is an academic or employment contract based on the context of circumstance and issue presented). Nonetheless, although an educational institution's

breach of contract with a student may warrant an order conferring a degree, <u>Papelino v. Albany College of Pharmacy of Union Univ.</u>, 633 F.3d 81, 93 (2d Cir. 2011), successful completion of the residency program at issue here does not automatically confer board certification as a surgeon, but merely renders a resident eligible to sit for the qualifying examination. The ultimate determination regarding Plaintiff's entitlement to board certification as a surgeon is within the purview of the American Board of Surgery, not UMRS. Accordingly, the Court finds that lost surgical practice earnings were not consequential damages within the contemplation of the parties at the time they entered into the residency employment agreement, and therefore such damages are not recoverable on this breach of contract action. <u>Diederich</u>, 2012 WL 4467546 at *13 (loss of future earnings not reasonably within contemplation of parties to residency employment agreement at time contract was made); see <u>Woodford</u>, 591 N.Y.S.2d at 583.

Thus, contrary to Plaintiff's assertion, this is not a case where "it is certain that damages have been caused by a breach of contract, and the only uncertainty is as to their amount." <u>Cole v. Macklowe</u>, 105 A.D.3d 604, 605, 964 N.Y.S.2d 104, 105 (N.Y.A.D. 1st Dep't 2013); see <u>Wathne Imports, Ltd. v. PRL USA, Inc.</u>, 101 A.D.3d 83, 89, 953 N.Y.S.2d 7, 11 (N.Y.A.D. 1st Dep't 2012) (where plaintiff shows stable basis for damages, the breaching party shoulders the burden of uncertainty regarding amount). Instead, Plaintiff has failed to establish his entitlement to any lost prospective earnings from a post-graduation and post-certification surgical practice.

## IV.  CONCLUSION

The Court concludes that an award of monetary damages based on lost post-graduation and post-board certification earnings from a potential surgical practice to be

inappropriate for the reasons stated above. Plaintiff proffers no other theory of recovery for monetary damages and, as such, Plaintiff's motion to compel discovery is denied as moot. Because Plaintiff was reinstated into the residency program in compliance with this Court's order in June 2012, (see September 20, 2012 Bench Statement at 3-4, Docket No. 142; see Reply Atty Affirm. of Christen Archer Pierrot, Esq. ¶ 5, Docket No. 127), and the parties agree that any issues related to that reinstatement should have no bearing on the current discussion of damages, (Pl's Mem of Law at 4 n. 2; UMRS's Mem of Law at 3, Pl's Reply Mem of Law at 4), there are no further outstanding issues in this case.

## V. ORDERS

IT IS HEREBY ORDERED that Plaintiff's request for monetary damages in connection with his breach of contract claim against Defendant UMRS is DENIED;

FURTHER, that Plaintiff's Motion to Compel Discovery (Docket No. 157) is DENIED as moot;

FURTHER, that the Clerk of the Court is directed to close the case.

SO ORDERED.

Dated: July 21, 2013
      Buffalo, New York

                                          /s/William M. Skretny
                                          WILLIAM M. SKRETNY
                                                Chief Judge
                                        United States District Court